IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

2019 SEP 30 PM 1: 18

| GONZALO TALAMANTES, | § | |
| --- | --- | --- |
| Plaintiff, | § | |
| v. | § | NO. EP-18-CV-00140-MAT |
| ANDREW SAUL,[1] COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Gonzalo Talamantes ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Pl.'s Compl., ECF No. 5, at 1). The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff was sixty-one years old at the time he last met the insured status requirements of sections the Social Security Act. (R. 17, 367).[2] The decision of the Administrative Law Judge

---

[1] Andrew Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is now substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this case.

[2] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

1

("ALJ") is dated January 23, 2017. *See* (R. 25). Plaintiff's past relevant work is that of a construction worker, specifically "cement work." (R. 122, 128, 419). On July 29, 2013, Plaintiff filed an application for a period of disability and DIB, in which he alleged disability beginning on June 24, 2013, due to bad stomach problems, appendix, high blood pressure, and high cholesterol. (R. 365–84, 418). After his application was denied initially and upon reconsideration, Plaintiff requested a hearing by an ALJ. (R. 144–51, 152–60, 197–98).

On December 18, 2014, a hearing was conducted before the ALJ. (R. 130–41). On February 20, 2015, the ALJ issued a written decision denying benefits at step five of the five-step sequential evaluation process on the basis that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as dishwasher. (R. 167–74). Plaintiff sought review of the ALJ's decision by the Appeals Council who remanded the case to the ALJ on July 2, 2016, because the ALJ's decision did not include sufficient rationale for the residual functional capacity ("RFC") assessment and the jobs identified by the vocational expert, and relied on by the ALJ at step five, conflicted with the assessed RFC. (R. 180–82). The Appeals Council directed the ALJ to: (1) obtain additional evidence, if warranted; (2) further consider the RFC, evaluate treating and examining source opinions in accordance with the Social Security Administration Regulations (the "Regulations") and Social Security Rulings, and provide specific references to evidence of record to support RFC; and (3) if warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. (R. 181).

On December 8, 2016, a second hearing was held before a different ALJ. (R. 114–29). Thereafter, on January 23, 2017, the ALJ issued a written decision denying benefits at step two of the five-step sequential evaluation process, concluding that Plaintiff did not have a severe

2

impairment or combination of impairments because Plaintiff's physical and mental impairments, "considered singly and in combination, do not significantly limit [Plaintiff's] ability to perform basic work activities." (R. 25). On March 8, 2018, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1–6).

In this appeal, Plaintiff argues that the ALJ's step-two finding is erroneous and warrants remand. (Pl.'s Br., ECF No. 18, at 2).

## II. LAW AND ANALYSIS

### A. STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and whether the Commissioner applied the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*,

209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman*, 1 F.3d at 360 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Id.* However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.

B. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, "disability" means, in relevant part, the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This means that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .

*Id.* at § 423(d)(2)(A).

The Regulations prescribe a "five-step sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If, at any step of the process, the ALJ finds that the claimant is either disabled or not disabled, the ALJ will make his determination as to disability and will not continue with a consideration of the remaining steps. *Id.* at § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* at § 404.1520(a)(4)(i). If so, the ALJ will find the claimant is not disabled and will not continue to step two. *Id.*

At the second step, the ALJ considers the medical severity of the claimant's impairment(s). *Id.* at § 404.1520(a)(4)(ii). An impairment or combination of impairments is severe within the meaning of the regulations if it "significantly limits" an individual's "ability to perform basic work activities." *Id.* at § 404.1520(c). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." SSR 85-28, at *3 (citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). If the ALJ determines that the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meet the duration requirement, then the ALJ will find that the claimant is not disabled and will not continue to step three. 20 C.F.R. § 404.1520(a)(4)(ii).

At the third step, the ALJ also considers the medical severity of the claimant's impairment(s), specifically whether the impairment(s) meets the duration requirement and "meets or equals one of [the] listings in appendix 1 of this subpart . . . ." *Id.* at § 404.1520(a)(4)(iii). If so, the claimant will be found to be disabled, and the ALJ will not continue to step four. *Id.*

Before proceeding to the fourth step, the ALJ will make a finding as to the claimant's RFC, "based on all the relevant medical and other evidence" in the administrative record. *Id.* at § 404.1520(e). A claimant's RFC is the most he can still do despite his physical and mental limitations that affect what he can do in a work setting. *Id.* at § 404.1545(a)(1). When assessing

5

the RFC, the ALJ will consider *all* of a claimant's medically determinable impairments, not just ones that the ALJ determines are severe. *Id.* at § 404.1545(a)(2).

At step four of the five-step sequential evaluation process, the ALJ considers the RFC assessment and the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv). If the ALJ determines that, considering the RFC, the claimant can still do his past relevant work, then the ALJ will find that the claimant is not disabled and will not continue to step five. *Id.* Finally, at step five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can adjust to other work. *Id.* at § 404.1520(a)(4)(v). If the ALJ finds that the claimant cannot, then the ALJ will find that the claimant is disabled. *Id.*

C. THE ALJ'S WRITTEN DECISION

In his written decision, the ALJ analyzed Plaintiff's application for disability using the five-step sequential evaluation process set forth in the Regulations. (R. 17–25). Before beginning the evaluation process, the ALJ found that Plaintiff "last met the insured status requirements of the Social Security Act on September 30, 2016." (R. 19). At step one of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between his alleged onset date of disability of June 24, 2013, through his date last insured, September 30, 2016. (R. 19). Proceeding to step two, the ALJ found that Plaintiff had the following medically determinable impairments: status-post laparoscopic cholecystectomy, hypertension, ventral hernia, alcoholic cirrhosis, rheumatoid arthritis, goiter, and anxiety. (R. 19). But, the ALJ found that these medically determinable impairments were not severe impairments, singly and in combination, because these impairments "do not significantly limit the claimant's ability to perform basic work activities." (R. 25). Accordingly, the ALJ determined that Plaintiff

6

was not under a disability between the alleged onset date and the date last insured and, therefore, did not proceed to step three, four, or five. (R. 25).

D. WHETHER THE ALJ'S STEP-TWO FINDING IS ERRONEOUS AND WARRANTS REMAND

Plaintiff raises four arguments that he contends demonstrate that the ALJ's step-two finding is erroneous. The Court will address them each in turn.

First, Plaintiff asserts that the record contains evidence of multiple impairments present for more than twelve months causing significant symptoms. (Pl.'s Br., ECF No. 18, at 4). In support, Plaintiff provides a lengthy listing of symptoms, diagnoses, and surgeries, with a single string citation. *Id.* In response, the Commissioner argues that the existence of impairments is not the focus of the step-two determination, and "[t]he ALJ properly focused on determining the extent of Plaintiff's functional limitations," citing specific instances of such in the record and the ALJ's decision. (Comm'r's Br., ECF No. 19, at 3–6).

Beyond providing a listing of symptoms, diagnoses, and medical procedures, Plaintiff has provided no specific argument that this information was not properly considered by the ALJ. However, the ALJ discussed these symptoms, diagnoses, and medical procedures in his written decision and explained with citations to the record why he found each medically determinable impairment to be non-severe. *See* (R. 21–23) (specifically explaining determinations as to cholecystectomy and ventral hernia, alcoholic cirrhosis, rheumatoid arthritis, goiter, hypertension, and anxiety). "The mere presence of some impairment is not disabling per se." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Plaintiff has not provided more specific arguments as to how the ALJ erred in his consideration of these symptoms, diagnoses, and medical procedures. The Court cannot reweigh the evidence. *See Newton*, 209 F.3d at 452. Having reviewed the ALJ's

discussion of the medical evidence, the Court finds substantial evidence exists to support his conclusions as to the severity of each medically determinable impairment.

Plaintiff's second argument of error is that the ALJ erroneously gave little weight to the opinions of his treating physician, Dr. Pablo Federico Castro, while giving "great weight" to the opinions of "one-time examining source Dr. Eleje and non-examining state agency physicians." (Pl.'s Br., ECF No. 18, at 4–6). The Commissioner argues that the ALJ properly considered the 2013 opinions of Dr. Castro and sufficiently explained his reasons for giving them little weight. (Comm'r's Br., ECF No. 19, at 6–9).

When determining disability, the ALJ will consider medical opinions from acceptable medical sources, including treating physicians, together with the rest of the relevant evidence in the record. 20 C.F.R. § 404.1527(a)–(b). A treating source's medical opinion on the issue(s) of the nature and severity of a claimant's impairment(s) will be given controlling weight if the ALJ finds that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at § 404.1527(c)(2).

When a treating source's medical opinion is not given controlling weight, the ALJ applies the factors listed in paragraphs (c)(2)(i)–(ii) and (c)(3)–(c)(6) of § 404.1527 in determining what weight to give the opinions and provides "good reasons" for the weight given. *Id.* at § 404.1527(c)(2). "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views, under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[3] *Newton*, 209 F.3d at 453 (emphasis in original).

---

[3] The criteria that the Fifth Circuit references at subsection (d)(2) in *Newton* are currently located at subsection (c)(2)(i)–(ii) and (c)(3)–(c)(6) of § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31,

These factors include the length, frequency, nature, and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, specialization of the physician, and other factors, such as the medical source's understanding of disability programs and evidentiary requirements and the extent to which the medical source is familiar with the other information in the claimant's case record. *Id.* at § 404.1527(c).

In a medical source statement dated November 22, 2013, Plaintiff's treating physician, Dr. Castro, opined that Plaintiff could lift less than 10 pounds occasionally and frequently, could stand and/or walk at least 2 hours in an 8-hour workday, could sit less than about 6 hours in an 8-hour workday, and had limitations pushing and/or pulling in his lower extremities due to anemia, hepatic cirrhosis, and lumbago with sciatica. (R. 520–21). Dr. Castro also opined that Plaintiff could only occasionally climb ramps/stairs/ladder/rope/scaffold, balance, kneel, crouch, crawl, or stoop. (R. 521). Furthermore, Dr. Castro opined that Plaintiff had manipulative limitations of reaching and fingering frequently and handling and feeling occasionally due to swelling and articular pain. (R. 522). Finally, Dr. Castro opined that Plaintiff had environmental limitations to vibration, humidity/wetness, hazards, fumes, odors, chemicals, and gases due to chronic conjunctive and perennial allergic rhinitis. (R. 523). The ALJ found these opinions inconsistent with the record specifically noting the inconsistencies between Dr. Castro's opinions and Dr. Eleje's opinions, Dr. Castro's own treatment notes, and the treatment notes of 2016. (R. 23).

The ALJ was not required to include a detailed analysis of the factors set forth in 20 C.F.R. § 404.1527(c) when giving Dr. Castro's opinions little weight because the record contained the opinions of Dr. Eleje who had examined Plaintiff and opined that Plaintiff did not have any limitations. *Newton*, 209 F.3d at 453; (R. 23, 500).

---

2006) *with* 20 C.F.R. § 404.1527 (effective Aug. 24, 2012 to Mar. 26, 2017) *and* 20 C.F.R. § 404.1527 (effective Mar. 27, 2017).

9

Furthermore, the ALJ's decision reflects his consideration of the § 404.1527(c) factors. In the discussion of the medical record evidence, the ALJ addressed the Plaintiff's treatment and diagnoses as reflected in Dr. Castro's notes for visits from January to July 2014, and further noted that "[t]he record indicates no evidence of treatment for over two years." (R. 21–23); *see* 20 C.F.R. § 404.1527(c)(2)(i)–(ii) (length, nature, and extent of treatment relationship and frequency of examination). The ALJ also noted that "[t]he evidence of record does not support the medical conditions Dr. Castro cited" in his opinions, which the ALJ had described in his prior discussion of the medical evidence from Dr. Castro, and specifically noted that "Dr. Castro's own treatment notes do not support his assessment." (R. 21–23); s*ee* 20 C.F.R. § 404.1527(c)(3) (supportability). Similarly, the ALJ found that Dr. Castro's opinions were not supported by the findings of Dr. Eleje's consultative examination as well as then-recent treatment notes from 2016 showing normal physical examinations, all of which the ALJ discussed in his written decision. (R. 21–23); *see* 20 C.F.R. § 404.1527(c)(4) (consistency).

Finally, although not specifically mentioned by the ALJ, there does not appear to be any evidence that Dr. Castro was a specialist, which might warrant greater weight given to his opinion, nor has Plaintiff identified any other factors that might have weighed in favor of providing Dr. Castro's opinions greater weight. *See* 20 C.F.R. § 404.1527(c)(5)–(c)((6) (specialization and other factors). Accordingly, the Court finds that the ALJ properly considered the opinions of Dr. Castro and gave good reasons in his written decision for the weight the ALJ afforded those opinions, in accordance with 20 C.F.R. § 404.1527(c).

Plaintiff's third assignment of error is that the ALJ did not properly develop the record because he did not request further clarification despite incomplete notes and observations from Dr. Castro and from Centro de Salud Familiar La Fe. (Pl.'s Br., ECF No. 18, at 6–7). In support,

Plaintiff refers the Court generally to the medical records from Dr. Castro, asserting that they "appear incomplete." *Id.* at 6. Plaintiff refers in a similar, general manner to the medical records from Centro de Salud Familiar La Fe, claiming they are incomplete "and just note objective findings based on 'visual overview' or at other times objective findings are not noted at all." *Id.* at 6–7. The Commissioner asserts that the ALJ was not required to further develop the record by requesting clarification from Plaintiff's physicians because there was a sufficient record before the ALJ to make a disability determination. (Comm'r's Br., ECF No. 19, at 9–10).

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) (citing *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981); *James v. Bowen*, 793 F.2d 702, 704 (5th Cir. 1986)); *see also* 20 CFR § 404.1512(b)(1), (b)(2) ("[B]efore we make a determination that you are not disabled, we will develop your complete medical history . . . and may ask you to attend a consultative examination at government expense."). For example, "[i]f the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, *absent other medical opinion evidence based on personal examination or treatment of the claimant*, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) (quoting *Newton*, 209 F.3d at 453) (emphasis in original).

Here, Dr. Castro was not the only examining physician; the medical record also includes Dr. Eleje's opinions based on personal examination of Plaintiff. (R. 498–500). Furthermore, Dr. Eleje's examination was a consultative examination provided at government expense. (R. 497). Moreover, Plaintiff has not indicated what specifically he believes is incomplete about the records and how contacting the medical sources might provide clarification. The ALJ discussed in detail

11

the medical evidence from several medical sources including the treatment notes of Dr. Castro, without indication that such evidence was inconclusive or inadequate to make a determination as to the severity of Plaintiff's medically determinable impairments. *See* (R. 21–23).

Plaintiff was also given the opportunity to provide additional evidence, and did so, after the case was initially remanded from the Appeals Council. *See* (R. 118, 180–82). At the second hearing the ALJ asked Plaintiff's attorney if there were "any additional medical reports or other documents that need to be submitted in order to complete this record." (R. 118). Plaintiff's attorney responded that there was no additional documentation. (R. 118).

For all of these reasons, the Court finds that the ALJ did not err by not requesting further clarification from Dr. Castro or from Centro de Salud Familiar La Fe.

Plaintiff's final claim of error is that the ALJ "erroneously relie[d] on the listing level severity requirements to make [the] finding" that Plaintiff's mental impairments were non-severe, and, therefore, the ALJ failed to apply the proper legal standard for step-two. (Pl.'s Br., ECF No. 18, at 7). The Commissioner did not address this argument.

In setting forth his analysis of Plaintiff's mental impairment, the ALJ referred to the "four broad functional areas, set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR., Part 404, Subpart P, Appendix 1)." (R. 24). The regulation effective at the time of the ALJ's decision states that mental impairments are to be evaluated under the "special technique" described in the Regulation, which includes assessing a claimant's functional abilities in the areas of "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself," and refers to 12.00C through 12.00H of the Listing of Impairments for more information about these factors. 20 C.F.R. § 404.1520a (eff. Jan. 17, 2017 to Mar. 26, 2017). Plaintiff has cited

no authority for his contention that it was error to apply the special technique at step two, nor has the Court found any. Rather, § 404.1520a(d) provides that the special technique will be used to determine the severity of a claimant's mental impairments. 20 C.F.R. § 404.1520a(d). Furthermore, Plaintiff has not raised any specific argument as to the ALJ's assessment of the evidence related to this analysis. Accordingly, the Court finds that the ALJ did not err in this respect.

Finally, Plaintiff argues that had the ALJ not erred, he likely would have continued past step two. (Pl.'s Br., ECF No. 18, at 7). Further, according to Plaintiff, if Dr. Castro's opinions were given greater weight Plaintiff would have been restricted to sedentary exertional level and found to be disabled at step five of the sequential evaluation process. *Id.* Accordingly, Plaintiff contends that he was prejudiced by the ALJ's errors. *Id.* "The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error." *Jones*, 691 F.3d at 734–35. The Court has already determined that the ALJ did not err in his step-two determination. However, even had the ALJ erred, Plaintiff has not provided more than mere speculation that such error prejudiced him. This is insufficient to meet his burden to show that prejudice resulted from an error. *See e.g., id.* at 735 ("A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden.").

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner will be **AFFIRMED**.

**SIGNED and ENTERED** this 30th day of September, 2019.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

13